# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | CA No. |
| vs. | ) | |
| | ) | |
| T-MOBILE USA, INC.; DEUTSCHE TELEKOM | ) | **JURY TRIAL DEMANDED** |
| AG; AMAZON.COM, INC.; ACER INC.; ACER | ) | |
| AMERICA CORPORATION; BARNES & | ) | |
| NOBLE, INC.; BARNESANDNOBLE.COM LLC; | ) | |
| BARNESANDNOBLE.COM INC.; DELL INC.; | ) | |
| GARMIN LTD.; GARMIN INTERNATIONAL, | ) | |
| INC.; GARMIN USA, INC.; HEWLETT- | ) | |
| PACKARD COMPANY; HTC CORP. a/k/a HIGH | ) | |
| TECH COMPUTER CORP.; HTC (B.V.I.) CORP.; | ) | |
| HTC AMERICA, INC.; EXEDEA, INC.; HUAWEI | ) | |
| TECHNOLOGIES CO., LTD.; HUAWEI | ) | |
| TECHNOLOGIES USA; HUAWEI DEVICE USA | ) | |
| INC.; LENOVO GROUP LTD.; LENOVO | ) | |
| HOLDING COMPANY, INC.; LENOVO | ) | |
| (UNITED STATES) INC.; LG ELECTRONICS, | ) | |
| INC.; LG ELECTRONICS USA, INC.; LG | ) | |
| ELECTRONICS MOBILECOMM U.S.A., INC.; | ) | |
| NOVATEL WIRELESS, INC.; NOVATEL | ) | |
| WIRELESS SOLUTIONS, INC.; NOVATEL | ) | |
| WIRELESS TECHNOLOGY, INC.; OPTION NV; | ) | |
| OPTION WIRELESS USA, INC.; PALM,INC.; | ) | |
| PANASONIC KABUSHIKI KAISHA a/k/a | ) | |
| PANASONIC CORPORATION; PANASONIC | ) | |
| CORPORATION; PANASONIC CORPORATION | ) | |
| OF NORTH AMERICA; PANASONIC | ) | |
| ELECTRONIC DEVICES CORPORATION OF | ) | |
| AMERICA; PANTECH CORP. f/k/a PANTECH | ) | |
| CO., LTD.; PANTECH WIRELESS, INC.; | ) | |
| RESEARCH IN MOTION LIMITED; RESEARCH | ) | |
| IN MOTION CORPORATION; SHARP | ) | |
| CORPORATION; SHARP ELECTRONICS | ) | |
| CORPORATION; SHARP ELECTRONICS | ) | |
| MANUFACTURING OF AMERICA, INC.; | ) | |
| SIERRA WIRELESS, INC.; SIERRA WIRELESS | ) | |
| AMERICA, INC.; SONY KABUSHIKI KAISHA | ) | |
| a/k/a  SONY CORPORATION; SONY | ) | |
| ELECTRONICS, INC.; SONY CORPORATION | ) | |
| OF AMERICA; SONY ERICSSON MOBILE | ) | |
| COMMUNICATIONS AB; SONY ERICSSON | ) | |
| MOBILE COMMUNICATIONS (USA) INC.; | ) | |

UTSTARCOM INC., UTSTARCOM PERSONAL )
COMMUNICATIONS LLC, ZTE )
CORPORATION, ZTE (USA) INC., and ZTE )
SOLUTIONS INC. )
                                     )
                    *Defendants.*    )

**COMPLAINT FOR PATENT INFRINGEMENT**

For its Complaint against T-Mobile USA, Inc., Deutsche Telekom AG,  Amazon.Com, Inc., Acer Inc., Acer America Corporation, Barnes & Noble, Inc., Barnesandnoble.com LLC, Barnesandnoble.com Inc., Dell Inc., Garmin Ltd., Garmin International, Inc., Garmin USA, Inc., Hewlett-Packard Company, HTC Corp. a/k/a High Tech Computer Corp., HTC (B.V.I.) Corp., HTC America, Inc., Exedea, Inc., Huawei Technologies Co., Ltd., Huawei Technologies USA, Huawei Device USA Inc., Lenovo Group Ltd., Lenovo Holding Company, Inc., Lenovo (United States) Inc., LG Electronics, Inc.,  LG Electronics USA, Inc., LG Electronics MobileComm U.S.A, Inc., Novatel Wireless, Inc., Novatel Wireless Solutions, Inc., Novatel Wireless Technology, Inc., Option NV, Option Wireless USA, Inc., Palm, Inc., Panasonic Kabushiki Kaisha a/k/a Panasonic  Corporation, Panasonic Corporation, Panasonic Corporation of North America, Panasonic Electronic Devices Corporation of America, Pantech Corp. f/k/a Pantech Co., Ltd., Pantech Wireless Inc., Research In Motion Limited, Research In Motion Corporation, Sharp Corporation, Sharp Electronics Corporation, Sharp Electronics Manufacturing of America, Inc., Sierra Wireless, Inc., Sierra Wireless America, Inc., Sony Kabushiki Kaisha a/k/a Sony Corporation, Sony Electronics, Inc., Sony Corporation of America, Sony Ericsson Mobile Communications AB, Sony Ericsson Mobile Communications (USA) Inc., UTStarcom Inc., UTStarcom Personal Communications LLC, ZTE Corporation, ZTE (USA) Inc., and ZTE Solutions Inc. (collectively, "Defendants"), Plaintiff Golden Bridge Technology, Inc. ("Plaintiff" or "GBT") alleges as follows:

## SUMMARY AND NATURE OF THE ACTION

1.      GBT developed and owns patented technology adopted within the standard for 3G wireless communications, including standards applying to devices and base stations.  GBT's

patented technology provided a significant improvement for enabling connections of standards-compliant mobile devices to standards-compliant 3G wireless networks.

2.      Although Defendants make and sell wireless mobile stations and/or operate a wireless network utilizing the 3G standard (and thus practice GBT's patented technology), Defendants have declined to license GBT's patents.  Accordingly, GBT seeks damages against all Defendants for acts of patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 et. seq.

3.      Defendants fall into two classes including (a) network providers and (b) mobile station providers.  The following named defendants fall into the following classes:

(a)  Network Providers:

(1) T-Mobile USA, Inc. and Deutsche Telekom AG  (collectively referred to as "T-Mobile");

(b)  Mobile Station Providers:

(1)      T-Mobile;

(2)      Amazon.Com, Inc.;

(3)      Acer Inc. and Acer America Corporation (collectively referred to as  "Acer");

(4)      Barnes & Noble, Inc., Barnesandnoble.com LLC, and Barnesandnoble.com Inc. (collectively referred to as "Barnes & Noble");

(5)      Dell Inc.

(6)      Garmin Ltd., Garmin International, Inc., and Garmin USA, Inc. (collectively referred to as "Garmin");

(7)      Hewlett-Packard Company ("HP");

(8)     HTC Corp. a/k/a High Tech Computer Corp., HTC (B.V.I.) Corp.,
        HTC America, Inc., and Exedea, Inc. (collectively referred to as
        "HTC");

(9)     Huawei Technologies Co., Ltd., Huawei Technologies USA, and
        Huawei Device USA Inc. (collectively referred to as "Huawei");

(10)    Lenovo Group Ltd., Lenovo Holding Company, Inc., and Lenovo
        (United States), Inc. (collectively referred to as "Lenovo");

(11)    LG Electronics, Inc., LG Electronics USA, Inc., and LG
        Electronics MobileComm U.S.A., Inc. (collectively referred to as
        "LG");

(12)    Novatel Wireless, Inc., Novatel Wireless Solutions, Inc., and
        Novatel Wireless Technology, Inc. (collectively referred to as
        "Novatel");

(13)    Option NV and Option Wireless USA, Inc. (collectively referred to
        as "Option");

(14)    Palm, Inc. ("Palm");

(15)    Panasonic Kabushiki Kaisha a/k/a Panasonic Corporation,
        Panasonic Corporation, Panasonic Corporation of North America,
        and Panasonic Electronic Devices Corporation of America
        (collectively referred to as "Panasonic");

(16)    Pantech Corp. f/k/a Pantech Co., Ltd. and Pantech Wireless Inc.
        (collectively referred to as "Pantech");

(17)    Research In Motion Limited and Research In Motion Corporation
        (collectively referred to as "RIM");

(18)    Sharp Corporation, Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively referred to as "Sharp");

(19)    Sierra Wireless, Inc. and Sierra Wireless America, Inc. (collectively referred to as "Sierra Wireless");

(20)    Sony Kabushiki Kaisha a/k/a Sony Corporation, Sony Corporation of America and Sony Electronics, Inc. (collectively referred to as "Sony");

(21)    Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc. (collectively referred to as "Sony Ericsson");

(22)    UTStarcom Inc. and UTStarcom Personal Communications LLC (collectively referred to as "UTStarcom");

(23)    ZTE Corporation, ZTE (USA) Inc. and ZTE Solutions Inc. (collectively referred to as "ZTE Solutions") (all named defendants affiliated with the above category of Mobile Station Providers numbered (1) through (23) shall be collectively referred to as the "Mobile Station Provider Defendants").

## THE PARTIES

4.    Plaintiff Golden Bridge Technology, Inc. is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business at 198 Brighton Avenue, Long Branch, New Jersey 07740.  GBT is the owner, by assignment, of all right, title and interest to U.S. Patent No. 6,574,267 B1 ("the '267 patent") (later reexamined and issued as U.S. Patent No. 6,574,267 C1 (the "Re '267 patent")) and U.S. Patent No. 7,359,427

B2 ("the '427 patent") (collectively, the Re '267 patent and the '427 patent shall be referred to as the "Patents-in-Suit").  GBT's ownership of the '267 patent, the Re '267 patent and the '427 patent includes the rights to license the patented technology.

5.      Defendant Deutsche Telekom AG is a German corporation with its principal place of business located at Friederich-Ebert Allee 140, 53113 Bonn, Germany.

6.      Defendant T-Mobile USA, Inc. is a Delaware Corporation with its principal place of business located at 12920 SE 38th Street, Bellevue, Washington 98006.  Defendant T-Mobile USA, Inc. is a wholly owned subsidiary of Defendant Deutsche Telekom AG.  Defendant T-Mobile USA, Inc.'s registered agent for service of process is Corporation Services Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.      Defendant Amazon.Com, Inc. ("Amazon") is a Delaware Corporation with its principal place of business located at 1200 12th Ave. South, Suite 1200, Seattle, Washington 98144.  Defendant Amazon.Com, Inc.'s registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.      Defendant Acer Inc. is a Chinese corporation with its principal place of business at 8F, 88, Sec. 1, Hsin Tai Wu Rd., Hsichih, Taipei 221, Taiwan, Republic of China.

9.      Defendant Acer America Corporation is a wholly owned subsidiary of Acer Inc., and is a corporation duly organized and existing under the laws of the State of California, with its principal place of business at 333 W. San Carlos St., Suite 1500, San Jose, California 95110. Acer America Corporation's registered agent for service of process is CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017.

10.     Defendant Barnes & Noble, Inc. is a Delaware corporation and its registered agent for service of process is Capital Services, Inc., 615 South DuPont Highway, Dover, Delaware 19901.

11.      Defendant Barnesandnoble.com LLC is a wholly owned subsidiary of Barnes & Noble, Inc. and is a Delaware limited liability company with its principal place of business at 122 Fifth Avenue, New York, NY 10011.  Barnesandnoble.com LLC's registered agent for service of process is Capitol Services, Inc., 615 South DuPont Highway, Dover, Delaware 19901.

12.      Defendant Barnesandnoble.com Inc. is a subsidiary of Barnes & Noble, Inc. Barnesandnoble.com Inc. is a Delaware corporation with business operations at 122 Fifth Avenue, New York, New York 10011.  Barnesandnoble.com Inc.'s registered agent for service of process is Capital Services, Inc., 615 South DuPont Highway, Dover, Delaware 19901.

13.      Dell Inc. ("Dell") is a Delaware corporation with its principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell's agent for service of process is the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

14.      Defendant Garmin Ltd. is a Swiss company with its principal place of business at Vorstandt 40/42 8200 Schaffhausen, Switzerland.  Defendant Garmin Ltd. is the parent company of other Garmin companies named in this action.

15.      Defendant Garmin International, Inc. is a subsidiary of Garmin Ltd.  Garmin International, Inc. is a Kansas corporation with its principal place of business at 1200 East 151st Street, Olathe, Kansas 66062.  Garmin International, Inc.'s registered agent for service of process is National Registered Agent's Inc., 2875 Michelle Drive, Suite 100, Irvine, California 92606.

16.      Defendant Garmin USA, Inc. is a subsidiary of Garmin Ltd.  Garmin USA, Inc. is a Kansas corporation with its principal place of business at 1200 East 151st Street, Olathe, Kansas 66062.  Garmin USA, Inc.'s registered agent for service of process is National Registered Agent's Inc., 2875 Michelle Drive, Suite 100, Irvine, California 92606.

17.     Defendant HP is a Delaware corporation with a principal palace of business at 3000 Hanover Street, Palo Alto, California 94304.  HP's registered agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

18.     Defendant HTC Corp. a/k/a High Tech Computer Corp. ("HTC Corp.") is a Chinese corporation with its principal place of business located at No. 23, Xinghua Rd., Taoyuan City, Taoyuan County 330, Taiwan, Republic of China.

19.     Defendant HTC (B.V.I.) Corp. ("HTC BVI") is a wholly-owned subsidiary of Defendant HTC Corp. and is incorporated under the laws of the British Virgin Islands with its principal place of business at 3F, Omar Hodge Building, Wickhams Cay I, P.O. Box 362, Road Town, Tortola, British Virgin Islands.  Defendant HTC  BVI is engaged in global investing and related activities on behalf of its parent, Defendant HTC Corp., and is itself a parent company of additional named defendants.

20.     Defendant HTC America, Inc. ("HTC America") is a wholly-owned subsidiary of Defendant HTC BVI and is incorporated under the laws of the State of Washington, with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. HTC America's registered agent for service of process is the National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston, Texas 77062.

21.     Defendant Exedea, Inc. ("Exedea") is a wholly-owned subsidiary of HTC BVI and is incorporated under the laws of the State of Texas with its principal place of business at 5950 Corporate Drive, Houston, Texas 77036.  Exedea's registered agent for service of process is HTC USA Inc., 5950 Corporate Drive, Houston, Texas 77036-2306.

22.     Defendant Huawei Technologies Co., Ltd. ("Huawei China") is a Chinese company, with its principal place of business at Bantian, Longgang District, Shenzhen 518129 P.R. China.

23.     Defendant Huawei Technologies USA is a wholly owned subsidiary of Huawei China and is incorporated under the laws of the State of Texas, with its principal place of business at 5700 Tennyson Parkway, Suite 500, Plano, TX 75024.  Huawei Technologies USA's registered agent for service of process is located at CT Corporation System, 350 N.  Saint Paul St. Suite 2900, Dallas, Texas 75201.

24.     Defendant Huawei Device USA Inc. is a wholly owned subsidiary of Huawei China and is incorporated under the laws of the State of Texas, with its principal place of business at 5700 Tennyson Parkway, Suite 500, Plano, TX 75024.  Huawei Device USA Inc.'s registered agent for service of process is located at CT Corporation System, 350 N. Saint Paul St. Suite 2900, Dallas, TX 75201.

25.     Defendant Lenovo Group Ltd. is a Chinese company, with its principal place of business at No. 6 ChuangYe Road, Shangdi Information Industry Base, Haidan District, Beijing, China 100085.

26.     Lenovo Holding Company, Inc. is a wholly owned subsidiary of Lenovo Group Ltd. and is a corporation organized and existing under the laws of the state of Delaware with a principal place of business at 1009 Think Place, Morrisville, North Carolina 27560.  Lenovo Holding Company, Inc.'s registered agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

27.     Lenovo (United States) Inc. is a wholly owned subsidiary of Lenovo Group Ltd. Lenovo (United States) Inc. is a Delaware corporation with a principal place of business at 1009 Think Pl., Morrisville, North Carolina 27560.  Lenovo (United States) Inc.'s registered agent for

service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

28.     Defendant LG Electronics, Inc. is a Korean corporation with a principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeunspo-gu, Seoul 150-721, South Korea.

29.     Defendant LG Electronics USA, Inc. is a wholly owned subsidiary of LG Electronics, Inc. and is Delaware corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  LG Electronics USA, Inc.'s registered agent for service of process is United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

30.     Defendant LG Electronics MobileComm U.S.A, Inc. is a wholly owned subsidiary of LG Electronics, Inc. LG Electronics MobileComm U.S.A., Inc. is a California corporation with its principal place of business at 920 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.  LG Electronics MobileComm U.S.A., Inc.'s registered agent for service of process in California is Alan K. Tse, 10101 Old Grove Road, San Diego, California 92131.  In New Jersey, LG Electronics Mobilecomm U.S.A., Inc. may be served at National Registered Agents, Inc. of New Jersey, 100 Canal Pointe Blvd., Suite 212, Princeton, New Jersey, 08540.

31.     Defendant Novatel Wireless, Inc. is a Delaware corporation with its principal place of business at 9645 Scranton Road, San Diego, California 92121.  Novatel Wireless, Inc.'s registered agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

32.     Defendant Novatel Wireless Solutions, Inc. is a subsidiary of Novatel Wireless, Inc.  Novatel Wireless Solutions, Inc. is a Delaware corporation with business operations also located at 9645 Scranton Road, San Diego, California 92121.  Novatel Wireless Solutions, Inc.'s

registered agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

33.     Novatel Wireless Technology, Inc. is a subsidiary of Novatel Wireless, Inc. Novatel Wireless Technology, Inc. is a Delaware corporation with business operations also located at 9645 Scranton Road, San Diego, California 92121.  Novatel Wireless Technology, Inc.'s registered agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

34.     Option NV is a Belgium corporation with its principal place of business located at Gaston Geenslaan 14, 3001 Leuven Belgium.

35.     Option Wireless USA, Inc. is a subsidiary of Option NV.  Option Wireless USA, Inc. is a Delaware corporation with its principal business operations located at 13010 Morris Road, Alpharetta, Georgia 30004.  Option Wireless USA, Inc.'s registered agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

36.     Defendant Palm is a Delaware corporation with its principal place of business at 950 West Maude Ave., Sunnyvale, California 94085.  Palm's registered agent for service of process is Corporation Service Company, 2711 Centerville Rd., Wilmington, Delaware 19808.

37.     Defendant Panasonic Kabushiki Kaisha a/k/a Panasonic Corporation ("Panasonic Japan") is a Japanese corporation with its principal place of business at 1006 Oaza Kadoma, Kadoma-shi, Osaka, 571-8501, Japan.

38.     Defendant Panasonic Corporation is a subsidiary of Panasonic Japan.  Panasonic Corporation is a Delaware corporation with its principal place of business located at One Panasonic Way, 1I-1 Secaucus, New Jersey 07094.  Panasonic Corporation's registered agent for

iManage\815886.8

service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St.,
Wilmington, Delaware 19801.

39.     Defendant Panasonic Corporation of North America is a subsidiary of Panasonic
Japan.  Panasonic Corporation of North America is a Delaware corporation with its principal
place of business located at One Panasonic Way, 1I-1 Secaucus, New Jersey 07094.  Panasonic
Corporation of North America's registered agent for service of process is Corporation Trust
Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

40.     Defendant Panasonic Electronic Devices Corporation of America ("Panasonic
Electronic") is a subsidiary of Panasonic Japan.  Panasonic Electronic is a Delaware corporation
with its principal place of business located at One Panasonic Way, 1I-1 Secaucus, New Jersey
07094.  Panasonic Electronics' registered agent for service of process is Corporation Trust
Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

41.     Defendant Pantech Corp. f/k/a Pantech Co., Ltd. is a Korean corporation with its
principal place of business located at Pantech R&D Center, I-2 DMC Sangam-dong, Mapo-gu,
Seoul, 415865, South Korea.

42.     Defendant Pantech Wireless, Inc. is a subsidiary of Pantech Co., Ltd.  Pantech
Wireless, Inc. is a Georgia corporation with its principal place of business located at 5607
Glendridge Drive, Atlanta, Georgia 30342.  Pantech Wireless, Inc.'s registered agent for service
of process in Georgia is Kathleen Elizabeth Jones, 5607 Glenridge Drive, Suite 500, Atlanta GA
30342.

43.     Defendant Research In Motion Limited is a Canadian corporation with a principal
place of business at 295 Phillip Street, Waterloo, Ontario, N2L 3W8, Canada.

44.     Defendant Research In Motion Corporation is a wholly owned subsidiary of
Research In Motion Limited.  Research In Motion Corporation is a Delaware corporation with a

principal place of business at 122 W. John Carpenter Parkway, Suite 430, Irving, Texas 75039. Research In Motion Corporation's agent for service of process is Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19807.

45.    Defendant Sharp Corporation is a Japanese corporation with a principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan.

46.    Defendant Sharp Electronics Corporation is a subsidiary of Sharp Corporation. Sharp Electronics Corporation is a New York corporation with a principal place of business at Sharp Plaza, Mahwah, NJ 07495.  Sharp Electronics Corporation's agent for service of process is CT Corporation System, 818 W. 7th St., Los Angeles, CA 90017.

47.    Defendant Sharp Electronics Manufacturing Company of America, Inc. is a subsidiary of Sharp Corporation.  Sharp Electronics Manufacturing Company of America, Inc. is a California corporation with a principal place of business at Sharp Plaza, Mahwah, NJ 07495. Sharp Electronics Manufacturing Company of America, Inc.  Sharp Electronics Manufacturing Company of America, Inc.'s registered agent for service of process is CT Corporation System 818 W. 7th Street, Los Angeles, California 90017.

48.    Defendant Sierra Wireless, Inc. is a Canadian corporation with its principal place of business at 13811 Wireless Way, Richmond, B.C. VDV 3A4, Canada.

49.    Defendant Sierra Wireless America, Inc. is a subsidiary of Sierra Wireless, Inc. Sierra Wirelesss America, Inc. is a Delaware corporation with a principal place of business is at 2200 Faraday Avenue, Suite 150, Carlsbad, California 92008.  Sierra Wireless America, Inc.'s agent for service of process is RL&F Service Corp., One Rodney Square, 10th Floor, Wilmington, Delaware 19801.

50.     Defendant Sony Kabushiki Kaisha a/k/a Sony Corporation is a Japanese corporation with its principal place of business at 7-1 Konan 1-Come, Minato-Ku, Tokyo, 108-0075, Japan.

51.     Defendant Sony Corporation of America is a subsidiary of Sony Corporation. Sony Corporation of America is a New York corporation with its principal place of business at 550 Madison Ave., New York, NY 10022.  Sony Corporation of America's agent for service of process is The Corporation Trust Company, 1209 North Orange St. Wilmington, Delaware 19801.

52.     Defendant Sony Electronics, Inc. is a subsidiary of Sony Corporation.  Sony Electronics, Inc. is a Delaware corporation with its principal place of business at 555 Madison Avenue, Fl. C,  New York, NY 10022.  Sony Electronics, Inc.'s agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

53.     Defendant Sony Ericsson Mobile Communications AB is a Swedish Limited Liability Company with its principal place of business at Nya Vattentornet, SE-221 88 Lund, Sweden.  Defendant Sony Ericsson Mobile Communications AB is the parent of the Sony Ericsson group of companies, which are located worldwide (including named Defendant Sony Ericsson Mobile Communications (USA), Inc.).

54.     Defendant Sony Ericsson Mobile Communications (USA) Inc. is a Delaware corporation with its principal place of business located at 7001 Development Drive, Research Triangle, North Carolina 27709.  Sony Ericsson Mobile Communications (USA) Inc.'s registered agent for service of process is Capitol Corporate Services Inc., 615 South Dupont Highway, Dover, Delaware 19901.

55.     Defendant UTStarcom Inc. is a Delaware corporation with Chinese business operations located at 20F, Tower E1, The Towers, Oriental Plaza No. 1, East Chang An Avenue,

Dong Cheng District, Beijing P.R. China 100738. UTStarcom Inc. also maintains business operations in the United States at 1275 Harbor Bay Parkway, Alameda, California 94502. UTStarcom Inc.'s registered agent for service of process is The Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

56.     Defendant UTStarcom Personal Communications LLC is a subsidiary of UTStarcom Inc. UTStarcom Personal Communications LLC is a Delaware limited liability company with business operations located at 1275 Harbor Bay Parkway, Alameda, California 94502. UTStarcom Personal Communications LLC's registered agent for service of process is The Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

57.     Defendant ZTE Corporation is a Chinese corporation with its principal place of business at No. 55, Hi-tech Road South, Shenzhen, P.R. China 518057. ZTE Corporation maintains business operations in the United States at 2425 N. Central Expressway, Suite 600, Richardson, Texas 75080.

58.     Defendant ZTE (USA) Inc. is a subsidiary of ZTE Corporation. ZTE (USA) Inc. is a New Jersey corporation with business operations at 33 Wood Ave. South, Floor 2, Iselin, New Jersey 08830 and also at 2425 N. Central Expressway, Richardson, Texas 75080. ZTE (USA) Inc.'s registered agent for service of process is Lixin Cheng, 33 Wood Avenue South, Floor 2, Iselin, New Jersey 08830.

59.     Defendant ZTE Solutions Inc. is a subsidiary of ZTE Corporation. ZTE Solutions Inc. is a Delaware corporation with business operations at 2425 N. Central Expressway, Suite 600, Richardson, Texas 75080. ZTE Solutions Inc.'s registered agent for service of process is Corporation Service Company, 2711 Centerville Road Suite 400, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

60.     This Court has subject matter jurisdiction of such federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

61.     Venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b), in that the acts and transactions complained of herein were conceived, carried out, made effective, or had effect within the State of Delaware and within this district, among other places.  On information and belief, each of the Defendants conduct business activities in this judicial district including regularly doing or soliciting business, engaging in conduct and/or deriving substantial revenue from goods and services provided to consumers in the State of Delaware and in this district. Furthermore, certain of the Defendants, including T-Mobile USA, Inc., Barnes & Noble, Inc., Barnesannoble.com LLC, Barnesandnoble.com Inc., Dell, HP, Lenovo Holding Company, Inc., Lenovo (United States) Inc., LG Electronics USA, Inc., Novatel Wireless, Inc., Novatel Wireless Solutions, Inc., Novatel Wireless Technology, Inc., Option Wireless USA, Inc., Palm, Panasonic Corporation, Panasonic Corporation of North America, Panasonic Electronic Devices Corporation of America, Research In Motion Corporation,  Sierra Wireless America, Inc., Sony Corporation of America, Sony Electronics, Inc., Sony Ericsson Mobile Communications (USA), Inc., UTStarcom Inc., UTStarcom Personal Communications LLC, and ZTE Solutions Inc. are registered to do business with the Delaware Secretary of State.

62.     On information and belief, this Court has personal jurisdiction over the Defendants.  Each of the Defendants conducts continuous and systematic business in Delaware and in this district by offering to sell and/or selling mobile devices and/or 3G wireless services in this State in this district.

## BACKGROUND OF THE DEVELOPMENT OF 3G WIRELESS NETWORKS

63.     The efficiency and quality of the wireless communication networks have seen extraordinary improvements over the past few decades.  Although prototypes of cell phones existed as early as the 1940s, cell phones were not commercially marketed in the United States until the early 1980s.   The first cell phone cost almost $4,000 per unit and operated on an analog network (also known as the First Generation or "1G" network).  Analog networks were notoriously slow and users of the analog networks often experienced distorted voices and call interferences.

64.     In the early 1990s, a set of standards defining the Second Generation or "2G" network was introduced.  The 2G digital network came with many advantages including increasing the capacity of the telecommunications system by allowing digital voice calls to be compressed, thereby using available bandwidth more efficiently.  The 2G network also allowed data transmission, enabling users to transmit text messages from one mobile phone to another mobile phone.

65.     Continued improvements to the 2G network were made, including, for example, the 2.5G network and the 2.75G (EDGE) network, both of which improved upon the abilities to use mobile phones to receive and transmit more advanced types of data including photos, email and the internet.

66.     Today, the third generation of wireless network standards, also known as "3G", has been widely deployed and is currently in use.  A 3G compliant network provides high speed bandwidth to handheld devices, including mobile phones, as well as other types of transmission/reception devices such as electronic readers, "smart phones", and laptop cards.  The 3G network expands the utility of wireless phones and other 3G compatible devices because it allows users to conduct tasks more quickly than in the past, including viewing video,

downloading books and magazines, sending and receiving text and multimedia messages, as well as making and receiving voice calls.   The advent of the 3G network allows users to watch mobile TV on demand, conduct video conferencing, and utilize location based services which allows users to find businesses or contacts nearby.   3G also allows users to simultaneously use voice and data services, allowing user to browse the internet and conduct a voice call at the same time from the same device.

## THE GLOBAL STANDARDIZATION OF 3G NETWORKS

67.     3G is a compilation of technologies, the standards for which are articulated by the International Telecommunication Union ("ITU"), a global standards setting organization. The ITU, through the International Mobile Telecommunications-2000 (IMT-2000) initiative mandated the necessity of, and the requirements for, a single global wireless standard. Many groups and committees worked together to develop mobile phone systems that are compliant with IMT-2000.  Those groups included the Telecommunications Industry Association ("TIA") and the European Telecommunications Standards Institute ("ETSI").

68.     In or around late 1998, various regional standards organizations and committees, including ETSI, formed a standards setting group with the purpose of creating  uniform standards for 3G wireless networks and the Wideband Code Division Multiple Access/Universal Mobile Telecommunications System (known as WCDMA/UMTS or sometimes just UMTS) that were compliant with the IMT-2000.  This standards setting organization was named the Third Generation Partnership Project ("3GPP").

69.     Currently all 3G networks claiming to be UMTS compliant must comply with the IMT-2000 global initiative as articulated by 3GPP.

70.     UMTS improved upon previous platforms by efficiently supporting increased speeds and capacity, thereby allowing even more robust uses of mobile devices.

iManage\815886.8

**GBT'S CONTRIBUTIONS TO THE TELECOMMUNICATIONS
STANDARDS REQUIRED BY THE IMT-2000 AND
<u>ARTICULATED BY 3GPP FOR 3G NETWORKS</u>**

71.     Each of GBT's patents (namely the '267 patent, the Re '267 patent and the '427

patent) relate to 3G networks utilizing UMTS compliant technology.

72.     The technology claimed in the '267 patent, the Re '267 patent and the '427 patent

was developed by GBT, an innovator in the mobile telecommunications field.

73.     Founded in 1995, GBT was formed for the purpose of developing wireless

solutions.  Originally, GBT's focus was developing solutions relating to making wireless

connections to broadband data networks.

74.     GBT worked to develop wireless solutions in the wireless marketplace.  GBT and

other entities, including AT&T, cooperated in the development of certain wireless technologies,

including a wireless multi-media service using GBT's technology known as Code Division

Multiple Access technology or "GB-CDMA".  GBT and AT&T also co-chaired standardization

committees together.

75.     In 1998, after the announcement that 3G would be standardized based on UMTS,

GBT invested additional resources designed to make the 3G UMTS environment more efficient

and faster.

76.      In 2001, many of GBT's technical innovations and contributions were ultimately

adopted by 3GPP as an important and necessary part of the 3G and UMTS standards.  3GPP

articulated these global standards in several documents, including one document entitled "3GPP;

Technical Specification Group Radio Access Network; Physical Layer Procedures (FDD)", of

which there have been several releases.

iManage\815886.8

77.     GBT's contributions to the 3G UMTS global standards greatly enhanced the efficiency with which data could be transmitted and was integral in enabling rapid, efficient connections of UMTS compliant mobile devices to a UMTS compliant 3G network.

78.     As a result of being adopted as part of the standard for 3G and UMTS, certain of GBT's technology is necessarily required for any use of a 3G UMTS compliant mobile device over any 3G UMTS compliant network.

79.     GBT, desiring to protect its technology, sought patents from the United States Patent and Trademark Office.

80.     On March 22, 1999, GBT filed the '267 patent application and on June 3, 2003, the United States Patent & Trademark Office duly and legally issued United States Letters Patent No. 6,574,267 B1 entitled "RACH-RAMP-UP ACKNOWLEDGEMENT" (the "'267 patent"). A true and correct copy of the '267 patent is attached hereto as Exhibit A and incorporated herein by reference.

81.     On December 15, 2009, after a full and fair re-examination of the '267 patent, the United States Patent & Trademark Office duly and legally issued an *Ex Parte* Reexamination Certificate Number 6,574,267 C1 entitled "RACH-RAMP-UP ACKNOWLEDGEMENT".  A true and correct copy of the *Ex Parte* Reexamination Certificate Number 6,574,267 C1  ("Re '267 patent") is attached hereto as Exhibit B.  The '267 and Re '267 patents claimed certain of GBT's contributions to the 3G UMTS standards required by the IMT-2000 and articulated by 3GPP.

82.     GBT also filed a continuation of the '267 patent application.  On April 15, 2008, the United States Patent & Trademark Office duly and legally issued United States Letters Patent No. 7,359,427 B2 entitled "RACH RAMP-UP ACKNOWLEDGEMENT" (the "'427 patent").  A true and correct copy of the '427 patent is attached hereto as Exhibit C and is incorporated

herein by reference. The '427 patent also claimed certain of GBT's contributions to the 3G

UMTS standards required by the IMT-2000 and articulated by 3GPP.

## GENERAL OVERVIEW OF CELLULAR TELECOMMUNICATIONS SYSTEMS AND THE RELATION TO THE PATENTS-IN-SUIT

83.     At the highest level of operation, a cellular telecommunications system comprises,

at least, a mobile station and a base station.

84.     Mobile stations, also known as mobile devices include cell phones, handsets,

smart phones, electronic readers, laptop cards, and other portable devices, which enable a user to

place and receive calls, send text and multimedia messages, or download or transmit files, media,

or other data, among other communication activities.

85.     Base stations, typically located on towers, are dispersed throughout geographic

locations.  The mobile stations must communicate with the base stations before the mobile

station is allowed access to the cellular network.

86.     The claims of GBT's '267 patent and the Re '267 patent are directed toward

components of mobile stations and base stations, which are used to establish communication

between UMTS compliant mobile stations and UMTS compliant base stations over a wireless

communication network.  The Re '267 patent also contains claims directed toward the

components of mobile stations which are used to establish communication between UMTS

compliant mobile stations and base stations over a wireless communication network.

87.     The claims of GBT's '427 patent claims are directed toward components of

mobile stations, which are used to establish communication between UMTS compliant mobile

stations and UMTS compliant base stations over a wireless communication network.

## DEFENDANT T-MOBILEAND ITS UNAUTHORIZED
## USE OF THE PATENTS-IN-SUIT

88.     T-Mobile is the fourth-largest wireless carrier in the U.S. market with approximately 34 million customers as of June 2009 and an annual revenue of $17 billion dollars.  T-Mobile provides a full range of wireless voice, messaging, and data services to customers in the United States via its 3G UMTS compliant wireless network.

89.     In 2008 T-Mobile announced the rollout of its 3G UMTS compliant network. Although T-Mobile's 3G UMTS compliant network was first made available only in New York City, T-Mobile rapidly increased the areas in which it offered its 3G UMTS compliant wireless communication network, and by November 2008, T-Mobile's 3G UMTS compliant network was available in more than 120 cities in the United States.

90.     T-Mobile's 3G UMTS compliant network has been hugely successful and at the end of 2009, T-Mobile reported to its investors that T-Mobile's national 3G network reaches over 205 million people, nearly doubling the 3G footprint previously held by T- Mobile.  T-Mobile also reported that as of the end of 2009, there were more than 3.9 million 3G-capable converged device users in the United States, an increase of almost 40% from the end of the third quarter of 2009.

91.     To offer T-Mobile's 3G UMTS wireless communication network, T-Mobile must necessarily practice the standards articulated by 3GPP, which are compliant with the IMT-2000.

92.     T-Mobile makes, uses, offers for sale and/or sells its 3G UMTS wireless communication network to consumers and subscribers within the United States

93.     To provide its 3G UMTS wireless communications network to customers throughout the United States, T-Mobile operates base stations and base station controllers throughout the United States.  These base stations and base station controllers are compliant with UMTS standards articulated by 3GPP and required by the IMT-2000.

94.     T-Mobile also manufactures and offers for sale T-Mobile branded UMTS compliant mobile devices configured to allow access to T-Mobile's 3G UMTS compliant network.  These mobile devices sold by T-Mobile include: webConnect Jet USB Laptop stick, T-Mobile Jet 3G Laptop Stick,  the webConnect Rocket USB Laptop stick, T-Mobile Comet, T-Mobile MyTouch 3G 3.5mm, T-Mobile 3G Slide, T-Mobile MyTouch 4G, and the T-Mobile Rocket 2.0 4G laptop stick devices.

95.     In addition to T-Mobile's own branded mobile devices, a number of other mobile devices are specifically configured to connect to T-Mobile's UMTS compliant 3G network. These mobile devices are manufactured under the brand names of various other companies, including HTC, Motorola, and RIM and are sold through the manufacturer or through T-Mobile itself.

96.     At least as early as April 15, 2009, GBT contacted T-Mobile by letter, informing T-Mobile that certain of GBT's patented technology was required by the standard articulated by 3GPP and offering T-Mobile the opportunity to license GBT's patents.  GBT stated that the '267 patent had recently emerged from reexamination and also enclosed a copy of the '427 patent.

97.     To date, T-Mobile continues to offer its 3G UMTS compliant wireless network to the public for a fee and also continues to sell mobile devices that are configured to connect to T-Mobile's UMTS compliant 3G wireless network.

98.     T-Mobile has not, to date, taken a license or otherwise obtained GBT's permission to use GBT's patented technology.

-22-

## OTHER MOBILE STATION PROVIDERS DEFENDANTS
## AND THEIR UNAUTHORIZED USE OF THE PATENTS-IN-SUIT

**A.    Mobile Station Provider Defendants That Manufacture, Use, Import Into The United States, Sell And/Or Offer For Sale Mobile Station Devices That Connect To 3G UMTS Complaint Wireless Networks**

99.    Traditionally, mobile stations are configured to connect to a wireless network belonging to a certain provider.  For example, consumers with a T-Mobile wireless plan may purchase certain mobile devices that are configured to connect to T-Mobile's 3G UMTS compliant wireless network.  Those devices may be sold by the manufacturer, T-Mobile itself, and sometimes by other third party distributors.

100.    While T-Mobile is the fourth largest wireless carrier in the U.S. market, AT&T is currently the second largest provider of wireless service in the United States, with over 85.1 million wireless customers, and more than 150 million total customers.

101.    AT&T provides a full range of wireless voice, messaging, and data services to consumer and enterprise customers via its 3G UMTS compliant wireless network.  Consumers with an AT&T wireless plan may purchase certain mobile devices that are configured to connect to AT&T's 3G UMTS compliant wireless network.  Those devices may be sold by the manufacturer, AT&T itself and sometimes by other third party distributors.

### a)    Amazon's Unauthorized Use of the Patents-In-Suit

102.    Amazon is an online retailer and sells books, e-readers, DVDs, CDs, computer software, video games, electronics, apparel and other items through its online website operating at http://www.amazon.com.

103.    Amazon makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale

and/or imported by Amazon that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Amazon e-reader marketed as the Kindle 3G + Wifi.

### b)  Acer's Unauthorized Use Of The Patents-In-Suit

104.   Acer designs and markets personal computing solutions including tablet personal computers, desktop personal computers, notebook computers, servers and displays.  Acer is extremely successful, and, according to Acer's own website, it ranks number two globally for total sales of personal computers and notebooks.

105.   Acer makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Acer that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Acer Aspire One, Acer Aspire One A0532h, and Acer AS1830T devices.

### c)  Barnes & Noble's Unauthorized Use of the Patents-In-Suit

106.   Barnes & Noble is a retailer selling books, magazines and e-readers, among other items.  Barnes & Noble makes its sales through its retail facilities as well as online through its website operating at http://www.barnesandnoble.com.

107.   Barnes & Noble makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Barnes & Noble that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Barnes & Noble e-reader marketed as the Nook 3G + Wifi device.

### d)      Dell's Unauthorized Use Of The Patents-In-Suit

108.      Dell designs and markets personal computing solutions including computers, desktop personal computers, notebook computers, servers and displays.

109.      Dell makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Dell that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Dell Inspiron Mini 10 HD.

110.      Dell makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network. Those mobile stations manufactured, used, sold, offered for sale and/or imported by Dell that are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network include the Dell Streak 7 and the Dell Inspiron Mini 10 4G devices.

### e)      Garmin's Unauthorized Use Of the Patents-In-Suit

111.      Garmin designs and markets navigation, communication and information devices serving aviation, marine, outdoor recreation, automotive and wireless applications.

112.      Garmin makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Garmin that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Garmin Nuviphone G60 device.

113.      Garmin makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network. Those mobile stations manufactured, used, sold, offered for sale

and/or imported by Garmin that are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network include the Garmin-Asus Garminfone devices.

### f)      HP's Unauthorized Use Of The Patents-In-Suit

114.    HP is a leading global provider of products, technologies, software, solutions and services to individual consumers, small- and medium-sized businesses and large enterprises. HP provides personal computers, workstations, handheld computing devices, calculators and other related accessories, software and services for the commercial and consumer markets. These products range from basic PDAs to advanced "smartphone" devices with voice and data capability.

115.    HP makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by HP that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the HP Mini 110 and the iPaq Glisten devices.

### g)      HTC's Unauthorized Use Of The Patents-In-Suit

116.    HTC is designs and manufacturers electronic products, including smartphones. HTC's sales revenue totaled $2.2 billion for 2005, a 102% increase from the previous year. It has been listed as the fastest growing technology company in BusinessWeek's Info Tech 100.

117.    HTC makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network. Those mobile stations manufactured, used, sold, offered for sale and/or imported by HTC that are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network include the HD2 and HD7 devices.

118.    HTC makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by HTC that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Surround, Aria, Pure and Tilt2 devices.

119.    At least as early as April 15, 2009, GBT contacted HTC by letter, informing HTC that certain of GBT's patented technology was required by the standard articulated by 3GPP and offering HTC the opportunity to license GBT's patents. GBT stated that the '267 patent had recently emerged from reexamination and also enclosed a copy of the '427 patent.

120.    HTC has not, to date, taken a license or otherwise obtained GBT's permission to use GBT's patented technology.

### h)      Huawei's Unauthorized Use Of The Patents-In-Suit

121.    Huawei is a leading telecom solutions provider.  Its products are deployed in over 100 countries and serve two billion users worldwide.  Some of these products include laptop connect cards, allowing laptop computers to connect to 3G UMTS compliant wireless networks.

122.    Huawei makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Huawei that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Connect 900 laptop connect card.

### i)      Lenovo's Unauthorized Use Of The Patents-In-Suit

123.    Lenovo designs and manufacturers electronic products including desktops, notebook personal computers, workstations, servers, storage drives, software and other services.

Lenovo is located worldwide and in 2009 Lenovo became the fourth largest vendor of personal computers in the world.

124.    Lenovo makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Lenovo that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Lenovo S10 device.

### j)        LG's Unauthorized Use Of The Patents-In-Suit

125.    LG designs and manufactures electronics, home appliances and mobile phones. LG is extremely successful, earning $38.6 billion in global sales and employing more than 82,000 people in over 80 subsidiaries worldwide.

126.    LG makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by LG that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the LG CF360, Incite,  Shine II, Arena, Neon, Xenon, expo, GU295, Quantum, Encore and VU Plus devices.

127.    LG makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network. Those mobile stations manufactured, used, sold, offered for sale and/or imported by LG that are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network include the LG Sentio, dLite and Optimus T devices.

128.    At least as early as April 15, 2009, GBT contacted LG by letter, informing LG that certain of GBT's patented technology was required by the standard articulated by 3GPP and

iManage\815886.8

offering LG  the opportunity to license GBT's patents. GBT stated that the '267 patent had

recently emerged from reexamination and also enclosed a copy of the '427 patent.

129.     LG has not, to date, taken a license or otherwise obtained GBT's permission to

use GBT's patented technology.

### k)     Novatel's Unauthorized Use Of The Patents-In-Suit

130.     Novatel is a leading provider of wireless broadband access solutions for the

worldwide mobile communications market.  Novatel provides a broad range of 3G UMTS

compliant devices and the industry's first intelligent mobile data hotspot.

131.     Novatel makes, uses, sells, offers for sale and/or imports into the United States

certain mobile stations which are configured to allow connection to AT&T's 3G UMTS

compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale

and/or imported by Novatel that are configured to allow connection to AT&T's 3G UMTS

compliant wireless network include the MiFi 2372.

### l)     Option's Unauthorized Use Of The Patents-In-Suit

132.     Option is a global leader in wireless technology, focused on the design,

development and manufacture of innovative solutions that provide businesses and consumers

with high quality wireless access to the internet. Option's product line consists of mobile devices,

software, and connect cards.

133.     Option makes, uses, sells, offers for sale and/or imports into the United States

certain mobile stations which are configured to allow connection to AT&T's 3G UMTS

compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale

and/or imported by Option that are configured to allow connection to AT&T's 3G UMTS

compliant wireless network include the Option GT Max 3.6 PCMCIA PC Broadband Card.

**m)**     **Palm's Unauthorized Use Of The Patents-In-Suit**

134.     Palm is well-known for designing and manufacturing personal digital assistant products, including electronic organizers and smart phones.

135.     Palm makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Palm that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Palm Pre Plus and the Palm Pixi Plus devices.

136.     At least as early as April 15, 2009, GBT contacted Palm by letter, informing Palm that certain of GBT's patented technology was required by the standard articulated by 3GPP and offering Palm the opportunity to license GBT's patents. GBT stated that the '267 patent had recently emerged from reexamination and also enclosed a copy of the '427 patent.

137.     Palm has not, to date, taken a license or otherwise obtained GBT's permission to use GBT's patented technology.

**n)**     **Panasonic's Unauthorized Use Of The Patents-In-Suit**

138.     Panasonic designs and manufacturers electronic products including notebook personal computers, televisions, and home appliances.

139.     Panasonic makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to 3G UMTS compliant wireless networks.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Panasonic that are configured to allow connection to 3G UMTS compliant wireless networks include the Panasonic Toughbook personal computers CF-74 and CF-29.

**o)**     **Pantech's Unauthorized Use Of The Patents-In-Suit**

140.     Pantech designs and manufactures electronics, including dual-sliding, double-keyboard mobile devices, as well as camera flip phones.

141.    Pantech makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Pantech that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Pantech Impact, Breeze II, Link, Pursuit, Ease, Reveal and Laser devices.

<strong>p)    Research In Motion's Unauthorized Use Of The
Patents-In-Suit</strong>

142.    RIM designs and manufactures electronics and is perhaps best known as the developer of the BlackBerry branded mobile devices used by millions of people worldwide.

143.    RIM makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by RIM that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Blackberry Bold 9700, Blackberry Bold 9000, Blackberry Curve 8310, Blackberry Pearl 8110, Blackberry Curve 8900, Blackberry Curve 8320, Blackberry Pearl 3G and Blackberry Torch devices.

144.    RIM makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by RIM that are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network include the Blackberry Bold 9700, Blackberry Bold 9780 and Blackberry Curve 3G devices.

145.    At least as early as April 15, 2009, GBT contacted RIM by letter, informing RIM that certain of GBT's patented technology was required by the standard articulated by 3GPP and

offering RIM the opportunity to license GBT's patents.  GBT stated that the '267 patent had recently emerged from reexamination and also enclosed a copy of the '427 patent.

146.    RIM has not, to date, taken a license or otherwise obtained GBT's permission to use GBT's patented technology.

### q)      Sharp's Unauthorized Use Of The Patents-In-Suit

147.    Sharp designs and manufacturers electronic products including televisions and other home theater equipment, printers, facsimile machines and mobile phones.

148.    Sharp makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Sharp that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the Sharp FX device.

### r)      Sierra Wireless' Unauthorized Use Of The Patents-In-Suit

149.    Sierra Wireless offers wireless technologies, solutions and wireless device applications.  Its products include aircards, data cards and mobile hotspots to connect people wirelessly over 3G UMTS compliant networks worldwide.

150.    Sierra Wireless makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to 3G UMTS compliant wireless networks.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Sierra Wireless that are configured to allow connection to 3G UMTS compliant networks include the Sierra Wireless Aircard 881 PC Card Modem.

### s)      Sony's Unauthorized Use Of The Patents-In-Suit

151.    Sony designs and manufacturers electronic products including televisions, cameras, home theater equipment and e-readers.

152.    Sony makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Sony that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the e-reader marketed as the Daily Edition PRS-900 with 3G wireless access.

**t)      Sony Ericsson's Unauthorized Use Of The Patents-In-Suit**

153.     Sony Ericsson began as a joint venture established on October, 2001 by the well known Sony Corporation and the Swedish telecommunications company Ericsson.  Sony Ericsson manufactures and develops mobile devices and is considered the fourth largest mobile phone manufacturer in the world after only Nokia, Samsung and LG.

154.    Sony Ericsson makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Sony Ericsson  that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the W518a and the Vivaz devices.

155.    Sony Ericsson makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by Sony Ericsson that are configured to allow connection to T-Mobile's 3G UMTS compliant wireless network include the Sony Ericsson Equinox device.

156.    At least as early as April 15, 2009, GBT contacted Sony Ericsson by letter, informing Sony Ericsson that certain of GBT's patented technology was required by the standard articulated by 3GPP and offering Sony Ericsson  the opportunity to license GBT's patents.  GBT

stated that the '267 patent had recently emerged from reexamination and also enclosed a copy of the '427 patent.

157.     Sony Ericsson has not, to date, taken a license or otherwise obtained GBT's permission to use GBT's patented technology.

### u)      UTStarcom's Unauthorized Use Of The Patents-In-Suit

158.     UTStarcom is a leader in the manufacture, integration and support of end to end networking and telecommunications solutions.

159.     UTStarcom makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to AT&T's 3G UMTS compliant wireless network.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by UTStarcom that are configured to allow connection to AT&T's 3G UMTS compliant wireless network include the UTStarcom GTX75 Quickfire device.

### v)      ZTE Solutions' Unauthorized Use Of The Patents-In-Suit

160.     ZTE Solutions is a leading global provider of telecommunications equipment and networking solutions.  It offers products applicable to voice, data, multimedia and wireless broadband services and has shipped more than 200 million mobile stations worldwide, including to the United States.

161.     ZTE Solutions makes, uses, sells, offers for sale and/or imports into the United States certain mobile stations which are configured to allow connection to 3G UMTS compliant wireless networks.  Those mobile stations manufactured, used, sold, offered for sale and/or imported by ZTE Solutions that are configured to allow connection to 3G UMTS compliant wireless network include the ZTE F160 device.

**B.    All Mobile Station Provider Defendants Continued Unauthorized
Use Of The Patents-In-Suit**

162.    To date, each of the Mobile Station Provider Defendants, individually and

collectively, continues to make, use, offer for sale, sell and/or import mobile devices into the

United States that are configured to connect to 3G UMTS compliant wireless networks.

**FIRST CLAIM FOR RELIEF AGAINST T-MOBILE FOR
INFRINGEMENT OF U.S. PATENT NO.  6,574,267 C1**

163.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-

162 of this Complaint as though fully set forth herein.

164.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest,

including the right to enforce the Re '267 patent.

165.    T-Mobile has directly infringed and continues to directly infringe the Re '267

patent by making, using, selling, or offering for sale in or importing into the United States the

base stations and/or base station processors used in T-Mobile's UMTS compliant 3G wireless

communication network which embody or otherwise practice one or more of the claims of the Re

'267 patent.

166.    T-Mobile  has directly infringed and continues to directly infringe the Re '267

patent by making, using, selling, or offering for sale in or importing into the United States the

mobile station devices used within T-Mobile's UMTS compliant 3G wireless communication

network, which embodies or otherwise practices one or more of the claims of the Re '267 patent.

These mobile devices include but are not limited to the webConnect Jet USB Laptop stick, T-

Mobile Jet 3G Laptop Stick,  the webConnect Rocket USB Laptop stick, T-Mobile Comet, T-

Mobile MyTouch 3G 3.5mm, T-Mobile 3G Slide, T-Mobile MyTouch 4G, and the T-Mobile

Rocket 2.0 4G laptop stick devices.

167.    T-Mobile has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons who make, use, sell or offer for sale or import into the United States mobile station devices configured to be used within T-Mobile's UMTS compliant 3G wireless communication network, which embodies or otherwise practice one or more of the claims of the Re '267 patent.   At the time of T-Mobile's conduct, T-Mobile had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

168.    As a direct and proximate result of T-Mobile's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

169.    T-Mobile has actual notice of the Re '267 patent owned by GBT.

170.    T-Mobile has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

171.    T-Mobile's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF AGAINST T-MOBILE FOR INFRINGEMENT OF U.S. PATENT NO.  7,359,427 B2

172.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-171 of this Complaint as though fully set forth herein.

173.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

174.    T-Mobile  has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States the mobile station devices used within T-Mobile's UMTS compliant 3G wireless communication network,

which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the webConnect Jet USB Laptop stick, T-Mobile Jet 3G Laptop Stick,  the webConnect Rocket USB Laptop stick, T-Mobile Comet, T-Mobile MyTouch 3G 3.5mm, T-Mobile 3G Slide, T-Mobile MyTouch 4G, and the T-Mobile Rocket 2.0 4G laptop stick devices.

175.    T-Mobile has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons who make, use, sell or offer for sale or import into the United States mobile station devices configured to be used within T-Mobile's UMTS compliant 3G wireless communication network, which embodies or otherwise practice one or more of the claims of the '427 patent.   At the time of AT&T's conduct, T-Mobile had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

176.    As a direct and proximate result of T-Mobile's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

177.    T-Mobile has actual notice of the '427 patent owned by GBT.

178.    T-Mobile has not had, nor does it have a reasonable basis for believing, that it had or has the right to engage in the acts complained of herein.

179.    T-Mobile's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT AMAZON FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

180.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-179 of this Complaint as though fully set forth herein.

181.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

182.    Amazon has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Kindle 3G + Wifi device.

183.    Amazon has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Kindle 3G + Wifi device. At the time of Amazon's conduct, Amazon had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

184.    As a direct and proximate result of Amazon's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

185.    Amazon has actual notice of the Re '267 patent owned by GBT.

186.    Amazon has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
## AMAZON FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

187.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-186 of this Complaint as though fully set forth herein.

188.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

189.    Amazon has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Kindle 3G + Wifi device.

190.    Amazon has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the Kindle 3G + Wifi device. At the time of Amazon's conduct, Amazon had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

191.    As a direct and proximate result of Amazon's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

192.    Amazon has actual notice of the '427 patent owned by GBT.

193.    Amazon has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT ACER FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

194.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-193 of this Complaint as though fully set forth herein.

195.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

196.    Acer has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Acer Aspire One, Acer Aspire One A0532h, and Acer AS1830T devices.

197.    Acer has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Acer Aspire One, Acer Aspire One A0532h, and Acer AS1830T devices. At the time of Acer's conduct, Acer had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

198.    As a direct and proximate result of Acer's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

199.    Acer has actual notice of the Re '267 patent owned by GBT.

200.    Acer has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

iManage\815886.8

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
## ACER FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

201.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-200 of this Complaint as though fully set forth herein.

202.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

203.    Acer has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Acer Aspire One, Acer Aspire One A0532h, and Acer AS1830T devices.

204.    Acer has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Acer Aspire One, Acer Aspire One A0532h, and Acer AS1830T devices. At the time of Acer's conduct, Acer had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

205.    As a direct and proximate result of Acer's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

206.    Acer has actual notice of the '427 patent owned by GBT.

207.    Acer has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT BARNES & NOBLE FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

208.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-207 of this Complaint as though fully set forth herein.

209.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

210.    Barnes & Noble has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Nook 3G + Wifi device.

211.    Barnes & Noble has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Nook 3G + Wifi device. At the time of Barnes & Noble's conduct, Barnes & Noble had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

212.    As a direct and proximate result of Barnes & Noble 's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

213.    Barnes & Noble has actual notice of the Re '267 patent owned by GBT.

214.    Barnes & Noble has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT
## BARNES & NOBLE FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

215.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-214 of this Complaint as though fully set forth herein.

216.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

217.     Barnes & Noble has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Nook 3G + Wifi device.

218.     Barnes & Noble has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the Nook 3G + Wifi device. At the time of Barnes & Noble's conduct, Barnes & Noble had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

219.     As a direct and proximate result of Barnes & Noble's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

220.     Barnes & Noble has actual notice of the '427 patent owned by GBT.

221.     Barnes & Noble has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANT DELL FOR
## INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

222.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-221 of this Complaint as though fully set forth herein.

223.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

224.    Dell has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Dell Inspiron Mini 10 HD, Dell Streak 7 and the Dell Inspiron Mini 10 4G devices.

225.    Dell has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Dell Inspiron Mini 10 HD, Dell Streak 7 and the Dell Inspiron Mini 10 4G devices.  At the time of Dell's conduct, Dell had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

226.    As a direct and proximate result of Dell's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

227.    Dell has actual notice of the Re '267 patent owned by GBT.

iManage\815886.8

228.    Dell has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

### TENTH CLAIM FOR RELIEF AGAINST DEFENDANT
### DELL FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

229.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-228 of this Complaint as though fully set forth herein.

230.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

231.    Dell has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Dell Inspiron Mini 10 HD, Dell Streak 7 and the Dell Inspiron Mini 10 4G devices.

232.    Dell has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Dell Inspiron Mini 10 HD, Dell Streak 7 and the Dell Inspiron Mini 10 4G devices.  At the time of Dell's conduct, Dell had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

233.    As a direct and proximate result of Dell's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

234.    Dell has actual notice of the '427 patent owned by GBT.

235.    Dell has not had, nor does it have a reasonable basis for believing that it had or

has the right to engage in the acts complained of herein.

## ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT GARMIN FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

236.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-

235 of this Complaint as though fully set forth herein.

237.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest,

including the right to enforce the Re '267 patent.

238.    Garmin has directly infringed and continues to directly infringe the Re '267 patent

by making, using, selling, or offering for sale in or importing into the United States mobile

station devices used within UMTS compliant 3G wireless communication networks, which

embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile

devices include but are not limited to the Garmin Nuviphone G60 and the Garmin-Asus

Garminfone devices.

239.    Garmin has indirectly infringed and continues to indirectly infringe the Re '267

patent by actively inducing direct infringement by other persons in the United States who use

mobile station devices configured to be used within 3G UMTS compliant wireless

communication networks, which embodies or otherwise practices one or more of the claims of

the Re '267 patent.  These mobile devices include but are not limited to Garmin Nuviphone G60

and the Garmin-Asus Garminfone devices. At the time of Garmin's  conduct, Garmin had

knowledge of the Re '267 patent, knew or should have known that its actions would induce

direct infringement by others, and intended that its actions would induce direct infringement by

others.

240.    As a direct and proximate result of Garmin's infringement of the Re '267 patent,

Plaintiff has been and continues to be damaged in an amount yet to be determined.

241.   Garmin has actual notice of the Re '267 patent owned by GBT.

242.   Garmin has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANT
## GARMIN FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

243.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-242 of this Complaint as though fully set forth herein.

244.   Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

245.   Garmin has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Garmin Nuviphone G60 and the Garmin-Asus Garminfone devices.

246.   Garmin has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Garmin Nuviphone G60 and the Garmin-Asus Garminfone devices. At the time of Garmin's conduct, Garmin had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

247.   As a direct and proximate result of Garmin's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

248.   Garmin has actual notice of the '427 patent owned by GBT.

249.     Garmin has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT HP FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

250.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-249 of this Complaint as though fully set forth herein.

251.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

252.     HP has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the iPaq Glisten and the HP Mini 110 devices.

253.     HP has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the iPaq Glisten and the HP Mini 110 devices.  At the time of HP's conduct, HP had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

254.     As a direct and proximate result of HP's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

255.     HP has actual notice of the Re '267 patent owned by GBT.

256.    HP has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## FOURTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
## HP FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

257.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-256 of this Complaint as though fully set forth herein.

258.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

259.    HP has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the iPaq Glisten and the HP Mini 110 devices.

260.    HP has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the iPaq Glisten and the HP Mini 110 devices.  At the time of HP's conduct, HP had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

261.    As a direct and proximate result of HP's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

262.    HP has actual notice of the '427 patent owned by GBT.

iManage\815886.8

263.     HP has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

**FIFTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT HTC FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

264.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-263 of this Complaint as though fully set forth herein.

265.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

266.     HTC has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the HTC HD2, HD7,  Surround, Aria, Pure and Tilt2 devices.

267.     HTC has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the HTC HD2, HD7, Surround, Aria, Pure and Tilt2 devices.  At the time of HTC's conduct, HTC had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

268.     As a direct and proximate result of HTC's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

269.     HTC has actual notice of the Re '267 patent owned by GBT.

270.    HTC has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

271.    HTC's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

### SIXTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT HTC FOR INFRINGEMENT OF U.S. PATENT NO.  7,359,427 B2

272.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-271 of this Complaint as though fully set forth herein.

273.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

274.    HTC has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the HTC HD2, HD7,  Surround, Aria, Pure and Tilt2 devices.

275.    HTC has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the HTC HD2, HD7, Surround, Aria, Pure and Tilt2 devices. At the time of HTC's conduct, HTC had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

276.   As a direct and proximate result of HTC's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

277.   HTC has actual notice of the '427 patent owned by GBT.

278.   HTC has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

279.   HTC's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

## SEVENTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT HUAWEI FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

280.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-279 of this Complaint as though fully set forth herein.

281.   Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

282.   Huawei has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Connect 900 laptop connect card.

283.   Huawei has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Connect 900 laptop connect card. At the time of Huawei's conduct, Huawei had knowledge of the Re '267 patent,

knew or should have known that its actions would induce direct infringement by others, and

intended that its actions would induce direct infringement by others.

284.    As a direct and proximate result of Huawei 's infringement of the Re '267 patent,

Plaintiff has been and continues to be damaged in an amount yet to be determined.

285.    Huawei has actual notice of the Re '267 patent owned by GBT.

286.    Huawei has not had, nor does it have a reasonable basis for believing that it had or

has the right to engage in the acts complained of herein.

### EIGHTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT HUAWEI FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

287.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-

286 of this Complaint as though fully set forth herein.

288.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest,

including the right to enforce the '427 patent.

289.    Huawei has directly infringed and continues to directly infringe the '427 patent by

making, using, selling, or offering for sale in or importing into the United States mobile station

devices used within UMTS compliant 3G wireless communication networks, which embodies or

otherwise practices one or more of the claims of the '427 patent. These mobile devices include

but are not limited to the Connect 900 laptop connect card

290.    Huawei has indirectly infringed and continues to indirectly infringe the '427

patent by actively inducing direct infringement by other persons in the United States who use

mobile station devices configured to be used within 3G UMTS compliant wireless

communication networks, which embodies or otherwise practices one or more of the claims of

the '427 patent.  These mobile devices include but are not limited to the Connect 900 laptop

connect card. At the time of Huawei's  conduct, Huawei had knowledge of the '427 patent, knew

or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

291.    As a direct and proximate result of Huawei's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

292.    Huawei has actual notice of the '427 patent owned by GBT.

293.    Huawei has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## NINETEENTH CLAIM FOR RELIEF AGAINST DEFENDANT LENOVO FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

294.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-293 of this Complaint as though fully set forth herein.

295.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

296.    Lenovo has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Lenovo S10 device.

297.    Lenovo has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to Lenovo S10 device. At the time of Lenovo's conduct, Lenovo had knowledge of the Re '267 patent, knew or should

have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

298.    As a direct and proximate result of Lenovo's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

299.    Lenovo has actual notice of the Re '267 patent owned by GBT.

300.    Lenovo has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## TWENTIETH CLAIM FOR RELIEF AGAINST DEFENDANT LENOVO FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

301.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-300 of this Complaint as though fully set forth herein.

302.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

303.    Lenovo has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Lenovo S10 device.

304.    Lenovo has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to Lenovo S10 device. At the time of Lenovo's conduct, Lenovo had knowledge of the '427 patent, knew or should have

known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

305.    As a direct and proximate result of Lenovo's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

306.    Lenovo has actual notice of the '427 patent owned by GBT.

307.    Lenovo has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

### TWENTY-FIRST CLAIM FOR RELIEF AGAINST DEFENDANT LG FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

308.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-307 of this Complaint as though fully set forth herein.

309.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

310.    LG has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the LG CF360, Incite,  Shine II, Arena, Neon, Xenon, expo, GU295, Quantum, Encore, VU Plus, LG Sentio, dLite and Optimus T devices.

311.    LG has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the LG CF360, Incite,  Shine II, Arena, Neon, Xenon, expo, GU295, Quantum, Encore, VU Plus, LG Sentio, dLite and Optimus

T devices.  At the time of LG's conduct, LG had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

312.    As a direct and proximate result of LG's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

313.    LG has actual notice of the Re '267 patent owned by GBT.

314.    LG has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

315.    LG's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

### TWENTY-SECOND CLAIM FOR RELIEF AGAINST DEFENDANT LG FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

316.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-315 of this Complaint as though fully set forth herein.

317.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

318.    LG has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the LG CF360, Incite,  Shine II, Arena, Neon, Xenon, expo, GU295, Quantum, Encore, VU Plus, LG Sentio, dLite and Optimus T devices.

319.    LG has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile

station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the LG CF360, Incite,  Shine II, Arena, Neon, Xenon, expo, GU295, Quantum, Encore, VU Plus, LG Sentio, dLite and Optimus T devices.  At the time of LG's conduct, LG had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

320.    As a direct and proximate result of LG's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

321.    LG has actual notice of the '427 patent owned by GBT.

322.    LG has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

323.    LG's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

**TWENTY-THIRD CLAIM FOR RELIEF AGAINST DEFENDANT NOVATEL FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

324.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-323 of this Complaint as though fully set forth herein.

325.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

326.    Novatel has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks,

which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the MiFi 2372.

327.    Novatel has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the MiFi 2372. At the time of Novatel's conduct, Novatel had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

328.    As a direct and proximate result of Novatel's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

329.    Novatel has actual notice of the Re '267 patent owned by GBT.

330.    Novatel has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

**TWENTY-FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
NOVATEL FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2**

331.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-330 of this Complaint as though fully set forth herein.

332.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

333.    Novatel has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or

otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the MiFi 2372.

334.    Novatel has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the MiFi 2372.  At the time of Novatel's conduct, Novatel had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

335.    As a direct and proximate result of Novatel's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

336.    Novatel has actual notice of the '427 patent owned by GBT.

337.    Novatel has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

**TWENTY-FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT OPTION FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

338.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-337 of this Complaint as though fully set forth herein.

339.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

340.    Option has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which

embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Option GT Max 3.6 PCMCIA PC Broadband Card.

341.    Option has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Option GT Max 3.6 PCMCIA PC Broadband Card. At the time of Option's conduct, Option had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

342.    As a direct and proximate result of  Option's  infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

343.    Option has actual notice of the Re '267 patent owned by GBT.

344.    Option has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

### TWENTY-SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT OPTION FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

345.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-344 of this Complaint as though fully set forth herein.

346.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

347.    Option has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or

otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Option GT Max 3.6 PCMCIA PC Broadband Card.

348.    Option has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Option GT Max 3.6 PCMCIA PC Broadband Card.  At the time of Option's conduct, Option had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

349.    As a direct and proximate result of  Option's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

350.    Option has actual notice of the '427 patent owned by GBT.

351.    Option has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

**TWENTY-SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT PALM FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

352.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-351 of this Complaint as though fully set forth herein.

353.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

354.    Palm has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which

embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Palm Pre Plus and the Palm Pixi Plus devices.

355.    Palm has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Palm Pre Plus and the Palm Pixi Plus devices.  At the time of Palm's conduct, Palm had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

356.    As a direct and proximate result of Palm's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

357.    Palm has actual notice of the Re '267 patent owned by GBT.

358.    Palm has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

359.    Palm's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

## TWENTY-EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT PALM FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

360.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-359 of this Complaint as though fully set forth herein.

361.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

362.     Palm has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Palm Pre Plus and the Palm Pixi Plus devices.

363.     Palm has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Palm Pre Plus and the Palm Pixi Plus devices.  At the time of Palm's conduct, Palm had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

364.     As a direct and proximate result of Palm's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

365.     Palm has actual notice of the '427 patent owned by GBT.

366.     Palm has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

367.      Palm's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

**TWENTY-NINTH CLAIM FOR RELIEF AGAINST DEFENDANT PANASONIC FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

368.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-367 of this Complaint as though fully set forth herein.

369.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

370.    Panasonic has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Panasonic Toughbook personal computers CF-74 and CF-29.

371.    Panasonic has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Panasonic Toughbook personal computers CF-74 and CF-29.  At the time of Panasonic's conduct, Panasonic had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

372.    As a direct and proximate result of Panasonic's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

373.    Panasonic has actual notice of the Re '267 patent owned by GBT.

374.    Panasonic has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## THIRTIETH CLAIM FOR RELIEF AGAINST DEFENDANT
## PANASONIC FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

375.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-374 of this Complaint as though fully set forth herein.

376.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

377.    Panasonic has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Panasonic Toughbook personal computers CF-74 and CF-29.

378.    Panasonic has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the Panasonic Toughbook personal computers CF-74 and CF-29.  At the time of  Panasonic's  conduct, Panasonic had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

379.    As a direct and proximate result of Panasonic's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

380.    Panasonic has actual notice of the '427 patent owned by GBT.

381.    Panasonic has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## THIRTY-FIRST CLAIM FOR RELIEF AGAINST DEFENDANT PANTECH
## FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

382.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-381 of this Complaint as though fully set forth herein.

383.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

384.     Pantech has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Pantech Impact, Breeze II, Link, Pursuit, Ease, Reveal and Laser devices.

385.     Pantech has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Pantech Impact, Breeze II, Link, Pursuit, Ease, Reveal and Laser devices.  At the time of Pantech's conduct, Pantech had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

386.     As a direct and proximate result of Pantech's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

387.     Pantech has actual notice of the Re '267 patent owned by GBT.

388.     Pantech has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

389.     As a direct and proximate result of Pantech's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

**THIRTY-SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
PANTECH FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2**

390.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-389 of this Complaint as though fully set forth herein.

391.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

392.     Pantech has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Pantech Impact, Breeze II, Link, Pursuit, Ease, Reveal and Laser devices.

393.     Pantech has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427  patent.  These mobile devices include but are not limited to the Pantech Impact, Breeze II, Link, Pursuit, Ease, Reveal and Laser devices.  At the time of Pantech's conduct, Pantech had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

394.    As a direct and proximate result of Pantech's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

395.    Pantech has actual notice of the 427 patent owned by GBT.

396.    Pantech has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

### THIRTY-THIRD CLAIM FOR RELIEF AGAINST DEFENDANT RIM FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

397.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-396 of this Complaint as though fully set forth herein.

398.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

399.    RIM has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Blackberry Bold 9700, Blackberry Bold 9780 and Blackberry Curve 3G, Blackberry Bold 9700, Blackberry Bold 9000, Blackberry Curve 8310, Blackberry Pearl 8110, Blackberry Curve 8900, Blackberry Curve 8320, Blackberry Pearl 3G and Blackberry Torch devices.

400.    RIM has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Blackberry Bold 9700, Blackberry Bold 9780 and Blackberry Curve 3G, Blackberry Bold 9700, Blackberry Bold

9000, Blackberry Curve 8310, Blackberry Pearl 8110, Blackberry Curve 8900, Blackberry Curve 8320, Blackberry Pearl 3G and Blackberry Torch devices.  At the time of RIM's conduct, RIM had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

401.    As a direct and proximate result of RIM's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

402.    RIM has actual notice of the Re '267 patent owned by GBT.

403.    RIM has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

404.    RIM's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

### THIRTY-FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT RIM  FOR  INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

405.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-404 of this Complaint as though fully set forth herein.

406.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

407.    RIM has directly infringed and continues to directly infringe the '427  patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427  patent. These mobile devices include but are not limited to the Blackberry Bold 9700, Blackberry Bold 9780 and Blackberry Curve 3G, Blackberry Bold 9700, Blackberry Bold 9000, Blackberry Curve 8310, Blackberry Pearl

8110, Blackberry Curve 8900, Blackberry Curve 8320, Blackberry Pearl 3G and Blackberry Torch devices.

408.    RIM has indirectly infringed and continues to indirectly infringe the '427  patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Blackberry Bold 9700, Blackberry Bold 9780 and Blackberry Curve 3G, Blackberry Bold 9700, Blackberry Bold 9000, Blackberry Curve 8310, Blackberry Pearl 8110, Blackberry Curve 8900, Blackberry Curve 8320, Blackberry Pearl 3G and Blackberry Torch devices.  At the time of RIM's conduct, RIM had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

409.    As a direct and proximate result of RIM's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

410.    RIM has actual notice of the '427 patent owned by GBT.

411.    RIM has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

412.    RIM's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

## THIRTY-FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT SHARP FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

413.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-412 of this Complaint as though fully set forth herein.

414.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

415.     Sharp  has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Sharp FX device.

416.     Sharp has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to Sharp FX device. At the time of Sharp's conduct, Sharp had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

417.     As a direct and proximate result of Sharp's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

418.     Sharp has actual notice of the Re '267 patent owned by GBT.

419.     Sharp has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## THIRTY-SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
## SHARP FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

420.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-419 of this Complaint as though fully set forth herein.

421.   Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

422.   Sharp has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Sharp FX device.

423.   Sharp has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to Sharp FX device. At the time of Sharp's conduct, Sharp had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

424.   As a direct and proximate result of Sharp's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

425.   Sharp has actual notice of the '427 patent owned by GBT.

426.   Sharp has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

### THIRTY-SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT SIERRA WIRELESS FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

427.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-426 of this Complaint as though fully set forth herein.

428.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

429.    Sierra Wireless has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Sierra Wireless 881 PC Card Modem.

430.    Sierra Wireless has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Sierra Wireless 881 PC Card Modem.  At the time of Sierra Wireless' conduct, Sierra Wireless had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

431.    As a direct and proximate result of Sierra Wireless' infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

432.    Sierra Wireless has actual notice of the Re '267 patent owned by GBT.

433.    Sierra Wireless has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

### THIRTY-EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT
### SIERRA WIRELESS FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

434.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-433 of this Complaint as though fully set forth herein.

435.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

436.    Sierra Wireless has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Sierra Wireless 881 PC Card Modem.

437.    Sierra Wireless has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the Sierra Wireless 881 PC Card Modem.  At the time of  Sierra Wireless' conduct, Sierra Wireless had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

438.    As a direct and proximate result of Sierra Wireless' infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

439.    Sierra Wireless has actual notice of the '427 patent owned by GBT.

440.    Sierra Wireless has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

**THIRTY-NINTH CLAIM FOR RELIEF AGAINST DEFENDANT SONY FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1**

441.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-440 of this Complaint as though fully set forth herein.

442.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

443.     Sony has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Sony e-reader Daily Edition PRS-900 with 3G wireless access.

444.     Sony has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the Sony e-reader Daily Edition PRS-900 with 3G wireless access.

445.     At the time of Sony's conduct, Sony had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

446.     As a direct and proximate result of Sony 's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

447.     Sony has actual notice of the Re '267 patent owned by GBT.

448.     Sony has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## FORTIETH CLAIM FOR RELIEF AGAINST DEFENDANT
## SONY  FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

449.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-448 of this Complaint as though fully set forth herein.

450.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

451.    Sony has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Sony e-reader Daily Edition PRS-900 with 3G wireless access.

452.    Sony has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Sony e-reader Daily Edition PRS-900 with 3G wireless access.

453.    At the time of Sony's conduct, Sony had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

454.    As a direct and proximate result of Sony's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

455.    Sony has actual notice of the '427 patent owned by GBT.

456.    Sony has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

iManage\815886.8

## FORTY-FIRST CLAIM FOR RELIEF AGAINST DEFENDANT SONY ERICSSON FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

457.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-456 of this Complaint as though fully set forth herein.

458.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

459.     Sony Ericsson has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the Sony Ericsson Equinox, W518a and Vivaz devices.

460.     Sony Ericsson has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the 'Re '267 patent.  These mobile devices include but are not limited to the Sony Ericsson Equinox, W518a and Vivaz devices.  At the time of Sony Ericsson's conduct, Sony Ericsson had knowledge of the Re '267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

461.     As a direct and proximate result of Sony Ericsson's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

462.     Sony Ericsson has actual notice of the Re '267 patent owned by GBT.

iManage\815886.8

463.    Sony Ericsson has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

464.    Sony Ericsson's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

**FORTY-SECOND CLAIM FOR RELIEF AGAINST DEFENDANT SONY ERICSSON FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2**

465.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-464 of this Complaint as though fully set forth herein.

466.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

467.    Sony Ericsson has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the Sony Ericsson Equinox, W518a and Vivaz devices.

468.    Sony Ericsson has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the Sony Ericsson Equinox, W518a and Vivaz devices.  At the time of Sony Ericsson's conduct, Sony Ericsson  had knowledge of the '427 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

469.     As a direct and proximate result of Sony Ericsson's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

470.     Sony Ericsson has actual notice of the '427 patent owned by GBT.

471.     Sony Ericsson has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

472.     Sony Ericsson's infringement has been willful and deliberate, making this an exceptional case and justifying the award of treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 3.5 U.S.C. § 285.

## FORTY-THIRD CLAIM FOR RELIEF AGAINST DEFENDANT UTSTARCOM FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

473.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-472 of this Complaint as though fully set forth herein.

474.     Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

475.     UTStarcom has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the UTStarcom GTX75 Quickfire device.

476.     UTStarcom has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent.  These mobile devices include but are not limited to the UTStarcom GTX75 Quickfire device.  At the time of UTStarcom's conduct, UTStarcom had knowledge of the Re

'267 patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

477.    As a direct and proximate result of UTStarcom's infringement of the Re '267 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

478.    UTStarcom has actual notice of the Re '267 patent owned by GBT.

479.    UTStarcom has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## FORTY-FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT UTSTARCOM FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2

480.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-479 of this Complaint as though fully set forth herein.

481.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the '427 patent.

482.    UTStarcom has directly infringed and continues to directly infringe the '427 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent. These mobile devices include but are not limited to the UTStarcom GTX75 Quickfire device.

483.    UTStarcom has indirectly infringed and continues to indirectly infringe the '427 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the '427 patent.  These mobile devices include but are not limited to the UTStarcom GTX75 Quifire device.  At the time of UTStarcom's conduct, UTStarcom had knowledge of the '427

patent, knew or should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

484.    As a direct and proximate result of UTStarcom's infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

485.    UTStarcom has actual notice of the '427 patent owned by GBT.

486.    UTStarcom has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## FORTY-FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT ZTE SOLUTIONS FOR INFRINGEMENT OF U.S. PATENT NO. 6,574,267 C1

487.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-486 of this Complaint as though fully set forth herein.

488.    Plaintiff GBT is the owner by assignment of the entire right, title, and interest, including the right to enforce the Re '267 patent.

489.    ZTE Solutions has directly infringed and continues to directly infringe the Re '267 patent by making, using, selling, or offering for sale in or importing into the United States mobile station devices used within UMTS compliant 3G wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the ZTE F160 device.

490.    ZTE Solutions has indirectly infringed and continues to indirectly infringe the Re '267 patent by actively inducing direct infringement by other persons in the United States who use mobile station devices configured to be used within 3G UMTS compliant wireless communication networks, which embodies or otherwise practices one or more of the claims of the Re '267 patent. These mobile devices include but are not limited to the ZTE F160 device. At the time of ZTE Solutions' conduct, ZTE Solutions had knowledge of the Re '267 patent,

knew or should have known that its actions would induce direct infringement by others, and
intended that its actions would induce direct infringement by others.

491.   As a direct and proximate result of ZTE Solutions' infringement of the Re '267
patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

492.   ZTE Solutions has actual notice of the Re '267 patent owned by GBT.

493.   ZTE Solutions has not had, nor does it have a reasonable basis for believing that it
had or has the right to engage in the acts complained of herein.

**FORTY-SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
ZTE SOLUTIONS FOR INFRINGEMENT OF U.S. PATENT NO. 7,359,427 B2**

494.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-
493 of this Complaint as though fully set forth herein.

495.   Plaintiff GBT is the owner by assignment of the entire right, title, and interest,
including the right to enforce the '427 patent.

496.   ZTE Solutions has directly infringed and continues to directly infringe the '427
patent by making, using, selling, or offering for sale in or importing into the United States
mobile station devices used within UMTS compliant 3G wireless communication networks,
which embodies or otherwise practices one or more of the claims of the '427 patent. These
mobile devices include but are not limited to the ZTE F160 device.

497.   ZTE Solutions has indirectly infringed and continues to indirectly infringe the
'427 patent by actively inducing direct infringement by other persons in the United States who
use mobile station devices configured to be used within 3G UMTS compliant wireless
communication networks, which embodies or otherwise practices one or more of the claims of
the '427 patent.  These mobile devices include but are not limited to the ZTE F160 device.  At
the time of ZTE Solutions' conduct, ZTE Solutions had knowledge of the '427 patent, knew or

should have known that its actions would induce direct infringement by others, and intended that its actions would induce direct infringement by others.

498.    As a direct and proximate result of ZTE Solutions' infringement of the '427 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

499.    ZTE Solutions has actual notice of the '427 patent owned by GBT.

500.    ZTE Solutions has not had, nor does it have a reasonable basis for believing that it had or has the right to engage in the acts complained of herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against each Defendant as follows:

1.    For a judicial determination and declaration that each of the Mobile Station Provider Defendants has infringed and continues to infringe the Patents-in-Suit by making, using, selling, or offering for sale in or importing into the United States mobile station devices that are used to connect to 3G UMTS compliant wireless networks;

2.    For a judicial determination and declaration that T-Mobile has infringed and continues to infringe the Re '267 Patent by making, using, selling, or offering for sale in or importing into the United States the base stations and/or base station processors used in T-Mobile's 3G wireless communication network which embody or otherwise practice one or more of the claims of the Re '267 patent;

3.    For a judicial determination and declaration that each of the Mobile Station Provider Defendants induces direct infringement of the Patents-in-Suit by other persons who use in the United States mobile station devices configured to be used within 3G UMTS compliant wireless communication networks which embodies or otherwise practice one or more of the claims of the Patents-in-Suit;

4.      For a judicial determination and decree that each of the following Defendants'
infringement of the Patents-in-Suit is willful:  T-Mobile, HTC, LG, Palm, RIM and Sony
Ericsson.

5.      For damages resulting from each of the Defendants' past and present infringement
of the Patents-in-Suit;

6.      For the trebling of such damages against each of T-Mobile, HTC, LG, Palm, RIM
and Sony Ericsson because of the willful and deliberate nature of the infringement;

7.      For a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an
award of attorneys' fees and costs in this action;

8.      For an assessment of prejudgment interest; and

9.      For such other and further relief as the Court may deem just and proper under the
circumstances.

iManage\815886.8

DATED: February 24, 2011

                                              */s/ David J. Margules*

David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD, MARGULES
  & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington, Del. 19801
(302) 573-3500 - Telephone
(302) 573-3501 - Facsimile
dmargules@bmf-law.com
sbrennecke@bmf-law.com

Roderick G. Dorman
Lawrence M. Hadley
Hazim Ansari
Mieke K. Malmberg
Bryan L. Yates
*(all above attorneys admitted Pro Hac Vice in*
 *10-428(SLR))*
HENNIGAN DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile
dormanr@hdlitigation.com
hadleyl@hdlitigation.com
ansarih@hdlitigation.com
malmbergm@hdlitigation.com
yatesb@hdlitigation.com

*Attorneys for Plaintiff Golden Bridge Technology, Inc.*

iManage\815886.8

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial pursuant to Rule 38 of the Federal Rules of Civil

Procedure as to all issues in this lawsuit.


DATED:  February 24, 2011


_____/s/ David J. Margules_____
David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES
  & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington, Del. 19801
(302) 573-3500 - Telephone
(302) 573-3501 - Facsimile
dmargules@bmf-law.com
sbrennecke@bmf-law.com

Roderick G. Dorman
Lawrence M. Hadley
Hazim Ansari
Mieke K. Malmberg
Bryan L. Yates
*(all above attorneys admitted Pro Hac Vice in*
 *10-428(SLR))*
HENNIGAN DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile
dormanr@hdlitigation.com
hadleyl@hdlitigation.com
ansarih@hdlitigation.com
malmbergm@hdlitigation.com
yatesb@hdlitigation.com

*Attorneys for Plaintiff Golden Bridge Technology, Inc.*

iManage\815886.8